## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

SPENCER EDGIN, on behalf of his minor
daughter, I.E.,

        *Plaintiff,*

 vs.                          Case No. 20-CV-02547-EFM-JPO

BLUE VALLEY U.S.D. 229, et al.,

        *Defendants.*

## MEMORANDUM AND ORDER

Plaintiff Spencer Edgin sues Blue Valley Unified School District 229 ("the District") and teacher Lydia Messenger on behalf of his minor daughter, I.E., a former student within the Blue Valley School District.  Plaintiff alleges that while I.E. was a student within the District, the District and Messenger were negligent and violated I.E.'s statutory and constitutional rights in their response to sexual harassment and bullying of I.E. by a boy in her school.  Now before the Court is Defendants' Motion for Partial Judgment on the Pleadings (Doc. 5).  For the reasons explained below, the Court grants the motion in part and denies it in part.

# I.    Factual and Procedural Background[1]

I.E. was a kindergarten student at Morse Elementary School in the Blue Valley School District during the 2018-2019 school year.   While at Morse, I.E. was on an Individualized Education Plan.   In November 2018, the school reported to I.E.'s parents that I.E. had kissed a male student.   I.E.'s parents reported to the school that they had noticed in the weeks leading up to the event that there had been a change in I.E.'s behavior.   In December 2018, they informed the school that I.E. seemed anxious and hesitant to go to school.   In January 2019, after winter break, I.E. told her mother that she did not want to go back to school because she was being bullied by the same boy that had kissed her in November.   I.E. told her mother that the boy was keeping her from playing with her friends and was threatening other children if they played with her.   The same month, I.E.'s parents met with unidentified persons at the school to discuss how I.E. was being treated and to come up with a plan for how to stop it.

At the meeting, the school members present acknowledged that they had noticed something going on with how the boy treated I.E. After the meeting, nothing was done to prevent the boy from interacting with I.E.   In March, I.E.'s parents informed the school that the boy had kissed I.E. multiple times despite I.E. rejecting the boy.   I.E. reported that the boy told I.E. he would not invite her to his birthday party or be her friend if she did not kiss him.   The following week, the boy threatened to punch I.E. in the face.   Then, in April, I.E.'s parents met with Morse staff and the principal, Steve Vandermark, to discuss their ongoing concerns.   At the meeting, Vandermark

---

[1] The following facts are taken from the well-pleaded allegations of the complaint and are accepted as true for purposes of this motion.

reported that he was unaware of the prior problems.  The parties at the meeting resolved that I.E. and the boy would be kept away from each other with the help of paraprofessionals.

Despite this plan, I.E. reported to her parents on May 13 that the boy kept following her at recess and asking to play with her, promising to be nice.  A few days later, the boy squeezed her arm during recess.  I.E.'s mother then observed I.E.'s class and stayed for lunch shortly thereafter. During her visit, I.E.'s mother observed the boy attempting to speak with I.E.  Finally, on May 21, the boy approached I.E.'s desk and told I.E. to stand up.  Once I.E. stood up, the boy kissed I.E. and pulled his own pants down.  He then directed I.E. to pull her pants down.  After I.E. told the boy "no," the boy told her he would make her pull her pants down.  I.E. then pulled her pants down.  The boy then touched I.E.'s vagina and demanded that she touch his penis.  I.E. complied with the demand.  Messenger then spotted the children and both students pulled their pants up.

After the incident, I.E.'s parents met with Vandermark and the school counselor, Jennifer Mullholland.  I.E.'s parents requested that I.E. stay at Morse, but that the boy be transferred to another school.  Shortly thereafter, Vandermark informed I.E.'s parents that the boy would return to Morse in the fall.  I.E.'s parents contacted administrators in the District to advance their request, but their request was denied.  I.E.'s parents ultimately moved I.E. to another school in the District, and I.E. has since been treated for PTSD and anxiety.

## II.    Legal Standard

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial.  The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[2]

---

[2] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

To survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[3]  All reasonable inferences from the pleadings are granted in favor of the non-moving party.[4]  Judgment on the pleadings is appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[5]  Documents attached to the pleadings are exhibits and may be considered in deciding a Rule 12(c) motion.[6]

## III.    Analysis

Plaintiff asserts eight counts against the District: (I) violation of Title IX; (II) violation of 42 U.S.C. § 1983 for denial of I.E.'s substantive rights under the Fourteenth Amendment for an unconstitutional policy, custom, or practice; (III); violation of 42 U.S.C. § 1983 for denial of I.E.'s substantive rights under the Fourteenth Amendment for failure to train and supervise; (IV): violation of 42 U.S.C. § 1983 for denial of I.E.'s Equal Protection rights under the Fourteenth Amendment; (V) violation of 42 U.S.C. § 1983 for denial of I.E.'s liberty interest in bodily integrity under the Due Process Clause of the Fourteenth Amendment; (VI) negligence; (VII) violation of Title II of the Americans with Disabilities Act; and (VIII) violation of § 504 of the Rehabilitation Act of 1973.  Plaintiff also asserts counts IV (equal protection) and VI (negligence)

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[4] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation omitted).

[5] *Id.* (quotations marks and citation omitted).

[6] *Park Univ. Enters., Inc. v. Am. Cas. Co.*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x 750, 753 (10th Cir. 2013).

against Defendant Messenger.  Defendants move for judgment on the pleadings for all counts, except count I.

### A.   Violation of 42 U.S.C. § 1983 for Denial of I.E.'s Substantive Rights Under the Fourteenth Amendment for an Unconstitutional Policy, Custom, or Practice

Plaintiff alleges in Count II that the District violated 42 U.S.C. § 1983 by denying I.E. her substantive rights under the Fourteenth Amendment for an unconstitutional policy, custom, or practice.  Section 1983 provides a cause of action against municipalities or other local governments where the governmental body "subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation."[7]  Governmental bodies are "responsible only for 'their *own* illegal acts' " and therefore are "not vicariously liable under § 1983 for their employees' actions."[8]

A plaintiff bringing a § 1983 claim must allege "(1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged."[9]  The custom or policy may be: (1) a formal regulation or policy statement; (2) an informal custom that "amounts to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;" (3) decisions of employees with final policymaking authority; or (4) "ratification by such

---

[7] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quotation marks and citation omitted).

[8] *Id.* (citations omitted).

[9] *Hollingsworth v. Hill*, 110 F.3d 733, 742 (10th Cir. 1997) (quotation marks and citations omitted).

final policymakers of the decisions."[10]  "When the liability theory rests on a [state actor's] 'failure to act,' the plaintiff must show that the [] inaction was the result of 'deliberate indifference.' "[11]

Plaintiff asserts that the District had a custom of failing to adequately respond to known instances of sexual harassment.  Plaintiff alleges three instances in which I.E.'s parents notified District employees of the harassing behavior by the boy prior to the May 21 incident.  Although Plaintiff alleges that District employees failed to act upon her first two complaints of harassment, it is unclear to whom the first two complaints were made.  When I.E.'s parents informed Principal Vandermark of the harassment at the April meeting, however, he agreed that the problem needed to be addressed, resolved that I.E. and the boy would be kept separate, and informed I.E.'s parents that he would discuss the behavior with the boy.  Although Plaintiff alleges that the harassment continued after the April meeting, Plaintiff did not allege that anyone informed any District employees of this continued harassment.  Further, she alleges that after the May 21 incident, although the District did not expel the boy from the school, its employees worked to create a new safety plan for I.E.  The District moves for judgment on the pleadings for failure to allege a custom of deliberate indifference.

In support of their positions, both parties cite *T.Y. ex rel. P.Y. v. Shawnee Mission School District USD 512*.[12]  In *T.Y.*, the plaintiff alleged that a male student had assaulted her in study hall.  The plaintiff further alleged that the School Resource Officer reported that the male student

---

[10] *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quotation marks and citations omitted).

[11] *N.E.L. v. Douglas Cty.*, 740 F. App'x 920, 932 (10th Cir. 2018) (quoting *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)).

[12] 2018 WL 2722501 (D. Kan. 2018).

"had made unwelcome physical contact with at least three other female students" prior to the incident with the plaintiff, and that the school's assistant principal also reported that she knew the boy had assaulted other female students prior to the plaintiff's complaint.[13]   Despite this knowledge, the assistant principal had failed to investigate or take disciplinary action.[14]   Denying the defendant's motion to dismiss, the Court noted that the plaintiff alleged that the school district failed "to respond properly to complaints from four victims against two harassers over a three-year period."[15]   The Court distinguished the numerous allegations in *T.Y.* from those in *Murrell v. School District No. 1*, in which the Tenth Circuit affirmed the dismissal of a plaintiff's claim where "one harasser's acts directed at one victim 'did not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter.' "[16]

Here, Plaintiff's factual allegations are more like those in *Murrell* than those in *T.Y.*   The failure of unidentified employees to respond to two sexual harassment complaints does not raise the inference that District employees engaged in a widespread custom of failure to respond to sexual harassment.   Moreover, Principal Vandermark acted on Plaintiff's complaint once notified. Although the safety plan developed may have ultimately been ineffective, this does not raise the inference that the District was deliberately indifferent to sexual harassment.   Count II is therefore dismissed.

---

[13] *Id.* at *2.

[14] *Id.* at *10.

[15] *Id.* at *11.

[16] *Id.* at *11 (quoting *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1250 (10th Cir. 1999)).

**B.**  **Violation of 42 U.S.C. § 1983 for Denial of I.E.'s Substantive Rights Under the Fourteenth Amendment for Failure to Train**

Plaintiff alleges in Count III that the District violated her substantive rights by failing to adequately train its employees to report, investigate, and respond to sexual harassment.   The Supreme Court has held that in "limited circumstances," failure to train can be the basis for liability under § 1983.[17]  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," however.[18]  It is only when a municipality's failure to train employees evidences a " 'deliberate indifference' to the rights of its inhabitants" that this failure to train can be considered "a city 'policy or custom' that is actionable under § 1983."[19] Deliberate indifference requires a showing that the municipality had "actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation," and a conscious or deliberate choice to disregard the harm.[20]

Notice can be established by either (1) proving the existence of a pattern of tortious conduct, or (2) showing that a violation of constitutional rights is a " 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction."[21]  "Evidence of a pre-existing pattern of violations is only unnecessary in a narrow range of circumstances, however rare, in which the unconstitutional consequences of a failure to train are highly predictable and

---

[17] *City of Canton v. Harris*, 489 U.S. 378, 387 (1989).

[18] *Connick*, 563 U.S. at 61 (citation omitted).

[19] *Canton*, 489 U.S. at 389.

[20] *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (1998).

[21] *Id.* at 1307–08 (citations omitted).

patently obvious."[22]  It is not sufficient to simply show that an injury or accident could have been avoided if an employee had better training or that a training program had occasionally been negligently administered.[23]

Plaintiff does not allege that the District had a policy not to train its employees regarding sexual harassment.  Rather, Plaintiff alleges that District policy prohibits sexual harassment, identifies behavior constituting sexual harassment, and requires that complaints of sexual harassment be promptly investigated and resolved.  Plaintiff therefore must state facts sufficient to allege that the District had actual or constructive notice of training deficiencies "substantially certain to result in a constitutional violation."[24]  The Court concludes that Plaintiff has failed to do so.

I.E.'s parents made three harassment complaints to the school prior to the May 21 incident. Although two complaints went unaddressed, when I.E.'s parents informed Principal Vandermark of the harassment, he developed a plan to keep the children separate and agreed to discuss the issue with the boy.  Two instances of failure to respond to reports of sexual harassment do not state a factual basis for a "widespread pattern" of tortious conduct within the District.[25]  Moreover, Plaintiff does not allege that any complaints were made to the District regarding the staff members' failure to respond to the harassment.  Thus, Plaintiff's complaint does not raise the plausible

---

[22] *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1285 (10th Cir. 2019) (quotation marks and citations omitted).

[23] *Canton*, 489 U.S. at 391.

[24] *Barney*, 143 F.3d at 1307.

[25] Although Plaintiff alleges that the harassment continued after the meeting with Vandermark, she does not allege that anyone informed the school that the harassment had not stopped prior to the May 21 incident.

inference that the District had knowledge of, or was deliberately indifferent to, deficiencies in its training programs.

Although Plaintiff cites a case in the Western District of Missouri— *Lewis v. Blue Springs School District*[26]—for the proposition that she has alleged sufficient facts to state a claim, the plaintiff in *Lewis* alleged many more facts giving rise to the inference that Blue Springs School District was deliberately indifferent to the severe bullying in its schools than Plaintiff has alleged here.  In *Lewis*, the plaintiff's son committed suicide due to bullying at his school.  The plaintiff alleged that the school district knew that the plaintiff's son and his friends had been victims of bullying in its schools for years, knew of specific incidents of bullying and suicides in its schools, and knew that the consistent response of its employees was to ignore or minimize bullying.[27]  Here, Plaintiff has failed to make similar allegations of a *widespread* pattern of misconduct by District employees, let alone notice to the District.  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."[28]  Count III is therefore dismissed.

## C.    Violation of 42 U.S.C. § 1983 for Denial of I.E.'s Equal Protection Rights Under the Fourteenth Amendment

Plaintiff next asserts that the District and Messenger violated I.E.'s right to Equal Protection by their deliberate indifference to the sexual harassment of I.E. by her fellow student. The Fourteenth Amendment provides that "no state shall . . . deny to any person within its jurisdiction the equal protection of the laws."  Claims for violation of the Fourteenth Amendment

---

[26] 2017 WL 5011893 (W.D. Mo. 2017).

[27] *Id.* at *11.

[28] *Connick*, 563 U.S. at 62.

-10-

are brought under § 1983.[29]  Like Plaintiff's claim for violation of her substantive rights, Plaintiff must allege: "(1) a continuing, widespread, and persistent pattern of misconduct by the state; (2) deliberate indifference to or tacit authorization of the conduct by policy-making officials after notice of the conduct; and (3) a resulting injury."[30]

### 1. *Claim Against Defendant District*

Plaintiff's Equal Protection claim against the District is substantially similar to her claim of violation of her substantive rights.  She brings her Equal Protection claim under the same theory of liability and alleges no additional factual allegations unique to her Equal Protection claim. Arguing against dismissal, Plaintiff again relies on *T.Y. ex rel. P.Y. v. Shawnee Mission School District* and further cites *Aubert v. Central New Mexico Community College*[31] for the proposition that an Equal Protection claim can be pursued where multiple complaints of sexual harassment were not adequately addressed.  Like Plaintiff's comparison to *T.Y.*, Plaintiff's comparison to *Aubert* falls short.

In *Aubert*, the plaintiff sought tutoring through her community college's learning center. Her assigned tutor repeatedly made inappropriate advances against her before eventually assaulting her in the learning center.  After the assault, the plaintiff notified two learning center supervisors, the human resources department, and the dean of students about the incident.  The two learning center supervisors failed to take any action in response to the complaint, and the human resources department and the dean of students failed to respond at all.  The plaintiff further

---

[29] *Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1124 (10th Cir. 2008).

[30] *Id.* at 1125.

[31] 2019 WL 1239435 (D.N.M 2019).

alleged that the college had knowledge that the tutor had previously engaged in inappropriate conduct with female students but had done nothing.

The court concluded that the plaintiff had sufficiently alleged a widespread institutional custom of failing to investigate or respond to sexual harassment complaints. The court noted that the plaintiff had alleged several instances in which her complaints were not acknowledged or addressed, including by the college's dean. Further, the court noted that the college's complete lack of Title IX policies permitted the reasonable inference that there was "widespread confusion about the institution's procedures for handling sexual harassment reports, as well as deliberate indifference or tacit authorization by policy makers regarding the failure to address such reports."[32] Here, although Plaintiff has alleged that no changes were made after two complaints to District employees, Plaintiff alleges that Principal Vandermark acted upon the third complaint and that, unlike the college in *Aubert*, the District had policies regarding the proper response to sexual harassment complaints. Plaintiff simply does not allege a widespread pattern of misconduct similar to those outlined in *T.Y.* and *Aubert*.

Additionally, and most critically, Plaintiff did not address Defendants' citation to binding Tenth Circuit authority in *Murrell*. The plaintiff in *Murrell* alleged that school employees violated her Equal Protection rights in their response to a hostile environment created by another student at the plaintiff's school.[33] Although multiple teachers *and* the school principal failed to appropriately respond to sexual misconduct by the boy, the Tenth Circuit affirmed a district court's dismissal of the plaintiff's Equal Protection claim. The court held that "acts of sexual harassment by a student

---

[32] *Id.* at *9.

[33] *Murrell*, 186 F.3d at 1249.

-12-

directed solely at [the plaintiff] do not demonstrate a custom or policy of the School District to be deliberately indifferent to sexual harassment as a general matter."[34]  Because Plaintiff's allegations against the District are substantially similar to those in *Murrell*, the Court concludes that Plaintiff has failed to state a claim against the District for violation of her Equal Protection rights.

### 2.   *Claim Against Defendant Messenger*

Plaintiff's Equal Protection claim against Defendant Messenger also fails to state a claim. "[A] governmental official or supervisory employee may be held liable under section 1983 upon a showing of deliberate indifference to known sexual harassment."[35]  In order to state a claim of deliberate indifference against Messenger, Plaintiff must allege that Messenger participated in or "actually knew of and acquiesced in" the harassment.[36]  Plaintiff states no such factual basis for her claim.

Plaintiff does not allege that Messenger witnessed any of the boy's harassment of I.E. prior to May 21 or that she was a party to any of the meetings between I.E.'s parents and the school. Plaintiff's first mention of Messenger individually is that of her witnessing the May 21 assault. Plaintiff has therefore failed to allege that Messenger was aware of the ongoing harassment by the boy, let alone deliberately indifferent to it.  Further, Plaintiff asserts no facts regarding the May 21 assault giving rise to the inference that Messenger acquiesced in the boy's misconduct.  Plaintiff alleges that upon being spotted by Messenger, the children pulled their pants up.  She alleges no other facts regarding Messenger's role in the incident.  Plaintiff therefore fails to allege that

---

[34] *Id.* at 1250.

[35] *Id.*

[36] *Id.* (citation omitted).

Messenger "consciously acquiesced" to the assault, and her claim against Messenger must fail. Because Plaintiff has failed to state a claim against Messenger, the Court need not address Messenger's qualified immunity claim. Count IV is dismissed as to both defendants.

**D.     Violation of 42 U.S.C. § 1983 for Denial of I.E.'s Liberty Interest in Bodily Integrity Under the Due Process Clause of the Fourteenth Amendment**

Generally, "state actors are liable only for their own acts, and not the violent acts of third parties."[37]   There are two exceptions to this rule: (1) "when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual" and (2) when the state "created the danger that harmed the individual."[38]   Although it is not entirely clear from Plaintiff's complaint whether Plaintiff intended to bring I.E.'s Due Process claim under a special relationship or danger creation theory, Defendants argued in their briefing that Plaintiff's claim cannot advance on either theory.   In Plaintiff's response, Plaintiff focused solely on the special relationship theory and did not advance arguments regarding danger creation.   The Court therefore assumes Plaintiff intended only to bring a claim under the special relationship doctrine.

To sufficiently plead a Due Process claim based on the special relationship doctrine, Plaintiff must allege: (1) "the existence of a special relationship;" (2) "that the defendant knew that the plaintiff was in danger or failed to exercise professional judgment regarding the danger;" (3) "that the defendant's conduct caused the plaintiff's injuries;" and (4) that the defendant's actions shock the conscience.[39]   A special relationship exists where "the plaintiff completely

---

[37] *Rost*, 511 F.3d at 1125 (citation omitted).

[38] *Id.* at 1126 (quotation marks and citations omitted).

[39] *Dahn v. Amedei*, 867 F.3d 1178, 1185–86 (10th Cir. 2017) (citations omitted).

depended on the state to satisfy basic human needs."[40]  "The existence of the special relationship is the pivotal issue: if none exists, a state cannot be held liable for a person's injuries at the hands of a private third party as opposed to a state actor."[41]  The Court concludes that Plaintiff has not alleged a special relationship sufficient to satisfy the first element of the special relationship doctrine.

The Tenth Circuit has explicitly held that "compulsory attendance laws do not create an affirmative constitutional duty to protect students from the private actions of third parties while they attend school."[42]  Although Plaintiff argues that a special relationship exists because Kansas law has since recognized a duty of schools to protect students from foreseeable harm, this duty is not a constitutional one.  In *Dunn v. Unified School District No. 367*,[43] cited by Plaintiff, the Kansas Court of Appeals addressed duties owed in the context of a negligence claim—not a constitutional Due Process claim.  *Dunn* therefore has no bearing on Plaintiff's constitutional claim.  Because Plaintiff has not pled a special relationship between I.E. and the District, her Due Process claim must fail.  Count V is dismissed.

## E.     Negligence

The Kansas Tort Claims Act ("KTCA") provides that governmental entities "shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity,

---

[40] *Id.* at 1185 (citation omitted).

[41] *Id.* at 1186.

[42] *Maldonado v. Josey*, 975 F.2d 727, 732 (10th Cir. 1992), *cert. denied*, 507 U.S. 914 (1993); *see also Graham v. Indep. Sch. Dist. No. I-89*, 22 F.3d 991, 994 (10th Cir. 1994).

[43] 30 Kan. App. 2d 215, 40 P.3d 315, 326 (2002), *rev. denied*, 274 Kan. 1111 (2002).

if a private person, would be liable under the laws of this state."[44]  Plaintiff asserts that Messenger

and the District have supervision and control over their students, and thus owe them a duty of care

to protect them from harm.  Plaintiff alleges that Defendants breached that duty by failing to follow

a plan designed to keep I.E. and the boy apart, resulting in harm to I.E.  Plaintiff further asserts

that the District was negligent in failing to investigate and remedy sexual harassment complaints

as required by District policy.

### 1. *Claim Against the District*

The District does not dispute that Plaintiff has stated a claim against it.  Instead, it argues

that discretionary function immunity under the KTCA precludes Plaintiff's claims.  K.S.A. 75-

6104(e) provides:

> A governmental entity or an employee acting with the scope of the employee's
> employment shall not be liable for damages resulting from . . . any claim based
> upon the exercise or performance or the failure to exercise or perform a
> discretionary function . . . whether or not the discretion is abused and regardless of
> the level of discretion involved.

Under the KTCA, however, "liability is to be the rule while immunity is to be the exception."[45]

Thus, "[t]he burden is upon the defendant governmental entity to establish immunity."[46]

First, the Court concludes that discretionary function immunity does not shield the District

from Plaintiff's claim of failure to reasonably supervise its students and protect I.E.  The Kansas

Supreme Court has held that " 'the discretionary function exception is not applicable in those

situations where a legal duty exists, either by case law or by statute, which the governmental

---

[44] K.S.A. 75-6103(a).

[45] *Stead v. Unified Sch. Dist. No. 259*, 92 F. Supp. 3d 1088, 1113 (D. Kan. 2015) (citation omitted).

[46] *Id.* (citation omitted).

agency is required to follow.' "[47]  Kansas law recognizes a duty of school districts to reasonably supervise and protect elementary and secondary students.[48]  This duty is separate from the doctrine of respondeat superior and derives "from the *in loco parentis* doctrine, recognizing that a school district stands in place of a student's parents during school hours."[49]  As such, "a school district, which voluntarily assumes custody over individuals has a duty to take reasonable steps to protect those individuals."[50]  "When a district employee breaches that duty, the district may be held *directly liable* for any foreseeable injury to the student."[51]  Because Kansas law clearly recognizes a duty of school districts to supervise and protect their students from harm, the District's claim of discretionary function immunity as to its duty to reasonably supervise and protect students is without merit.

Next, the Court concludes that discretionary function immunity does not shield the District from Plaintiff's claim of failure to investigate her complaints of sexual harassment.  The District argues that investigation of sexual harassment complaints is inherently discretionary, asserting that clear Kansas authority holds that the investigation of misconduct and the imposition of discipline are discretionary acts.  The Court concludes that the facts of the District's cited cases are distinguishable from those here.  In *Stead v. Unified School District No. 259*, a former principal sued U.S.D. 259 for various causes of action arising from the school district's investigation of

---

[47] *Kan. State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 819 P.2d 587, 600 (citation omitted); *see also Stead*, 92 F. Supp. at 1114 (citations omitted).

[48] *Sanchez ex rel. Sanchez v. Unified Sch. Dist. 469*, 50 Kan. App. 2d 1185, 339 P.3d 399, 409–10 (2014); *see also Dunn*, 40 P.3d at 326–27.

[49] *Sanchez*, 339 P.3d at 410.

[50] *Id.*

[51] *Id.* (emphasis added).

alleged improprieties during the administration of state assessment tests.[52]   Holding that the plaintiff's claims were barred by discretionary function immunity, this Court noted that the undisputed facts showed that U.S.D. 259's superintendent was required to exercise policymaking discretion in investigating the alleged misconduct and formulating a response.   Further, the superintendent's response was "not dictated by strict guidelines or mandates."[53]

The facts here are wholly unlike those in *Stead.*   The District's sexual harassment policy states that staff members who receive sexual harassment complaints "*shall* notify the principal as soon as possible."[54]   Plaintiff clearly asserts that I.E.'s parents made two sexual harassment complaints to I.E.'s school and that the principal was not notified of those complaints as required by District policy.   Plaintiff therefore does not allege that the District's employees were negligent in exercising discretionary and policymaking authority, but rather, alleges a complete failure of the District's employees to follow mandatory policies.   As such, discretionary function immunity cannot bar Plaintiff's claim against the District.   Count VI against the District for breach of its duty to reasonably supervise its students and protect I.E., and for the failure of its employees to comply with mandatory duties under the District's sexual harassment policy remains.[55]

---

[52] *Stead*, 92 F. Supp. at 1094.

[53] *Id.* at 1114.

[54] Def.'s Ex. A, Doc. 6-1, at 3 (emphasis added).

[55] The District also argues that any claim regarding the sufficiency of the District's investigation is barred by discretionary function immunity.  In her response, Plaintiff states that she does not allege that the District was negligent in carrying out its investigation, but rather, failed to complete any investigation at all.  Because Plaintiff has conceded that she does not allege that the District negligently conducted its investigation, the Court need not address whether discretionary function immunity would bar such a claim.

## 2. *Claim Against Messenger*

Turning toward Plaintiff's claim against Messenger, teachers also owe students a duty to reasonably protect them from harm.[56]  Plaintiff has alleged that Messenger breached that duty in failing to reasonably keep I.E. safe.  Messenger argues that Plaintiff's claim must fail, however, because (1) the discretionary function exception bars Plaintiff's claim against her; (2) the District policies identified by Plaintiff do not place any duties on Messenger; and (3) Plaintiff's KTCA notice was insufficient.

As noted above, K.S.A. 75-6104(e) immunizes state employees from claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function."  The KTCA does not supply a statutory definition for the term "discretionary function," but the Kansas Supreme Court has held that "the mere exercise of some judgment cannot be the test for a discretionary function because 'judgment is exercised in almost every human endeavor.' "[57]  "The more a judgment involves the making of policy the more it is of a 'nature and quality' to be recognized as inappropriate for judicial review."[58]

Citing *Jackson ex rel. Essien v. Unified Sch. Dist. 259*,[59] Messenger argues that a teacher supervising a classroom must make constant discretionary choices, and thus, Plaintiff must point to specific guidelines for classroom supervision that would have stripped Messenger of that discretion.  *Jackson*, however, primarily dealt with the recreational use exception set forth in

---

[56] *Sanchez*, 339 P.3d at 410.

[57] *Kan. State Bank & Tr. Co.*, 819 P.2d at 600 (alteration and citation omitted).

[58] *Id.*

[59] 26 Kan. App. 2d 111, 979 P.2d 151 (1999), *rev'd*, 268 Kan. 319, 995 P.2d 844 (2000).

K.S.A. 75-6104(o), which precludes liability "for injuries resulting from the use of any public property intended or permitted to be used . . . for recreational purposes" absent "gross and wanton negligence."

In *Jackson*, a student was injured in P.E. class while using a springboard to dunk a basketball.  U.S.D. 259 argued that it had immunity from Jackson's negligence claim based on K.S.A. 75-6104(o) and (e).  Affirming the trial court's summary judgment verdict, the court held that subsection (o) shielded U.S.D. 259 because Jackson had presented no evidence of gross or wanton negligence.  It further held that even if subsection (o) did not apply, the discretionary function exception shielded the school district because "[t]here was no clearly defined mandatory duty or guideline for the teacher's actions in dealing with students in the physical education class" and because "[t]he teacher's decision on whether to allow the students to use the springboard required that he exercise discriminating judgment."[60]  The court rejected Jackson's argument that the school district had a duty to protect Jackson while he was on school property, stating that the Kansas Court of Appeals had considered and rejected the argument in *Lanning v. Anderson*.[61]

Since *Jackson* and *Lanning*, however, the Kansas Court of Appeals has twice recognized the duty of teachers and school districts to reasonably protect students from harm.[62]  Further, this Court has been unable to locate *any* cases decided since *Sanchez* and *Dunn* applying the discretionary immunity exception to protect schools and their employees from liability for harm

---

[60] *Id.* at 154.

[61] *Id.* at 155 (citing *Lanning ex rel. Lanning v. Anderson*, 22 Kan. App. 2d 474, 921 P.2d 813 (1996)).

[62] *Sanchez*, 339 P.3d at 410; *Dunn*, 40 P.3d at 326–27.

caused to school-aged children.[63]  Discretionary function immunity therefore cannot defeat I.E.'s claim against Messenger.

Messenger next asserts that the District's policies regarding sexual harassment outlined in I.E.'s complaint do not place any duties on Messenger, and thus, I.E.'s negligence claim against Messenger must fail.  Plaintiff conceded in her response that she has not stated a claim against Messenger based on a failure to investigate the sexual harassment complaints.  The Court therefore concludes that Plaintiff has stated a negligence claim against Messenger only for the alleged breach of the duty to reasonably supervise students and protect I.E. from harm.

Finally, Messenger asserts that Plaintiff's KTCA notice was deficient, arguing that Plaintiff's notice of claim did not identify Messenger by name or identify any bad acts done by her.  Messenger therefore asserts the notice cannot be reasonably construed to have provided notice to the District of I.E.'s potential claim against Messenger.  The Court disagrees.  K.S.A. 12-105b requires that plaintiffs asserting claims against a municipality, or an employee of a municipality, which could give rise to an action under the KTCA, must provide certain written notice to the clerk or governing body of the municipality.  That notice must conclude:

> (1) The name and address of the claimant and the name and address of the claimant's attorney, if any; (2) a concise statement of the factual basis of the claim, including the date, time, place and circumstances of the act, omission or event complained of; (3) the name and address of any public officer or employee involved, if known; (4) a concise statement of the nature and the extent of the injury claimed to have been suffered; and (5) a statement of the amount of monetary damages that is being requested.[64]

---

[63] The discretionary function exception has been applied, however, in cases involving college-aged students. *See generally Wellhausen v. Univ. of Kan.*, 40 Kan. App. 2d 102, 189 P.3d 1181 (2008).

[64] K.S.A. 12-105b(d).

"Substantial compliance" with the statute constitutes valid filing of a claim.[65]  As such, the Kansas Supreme Court has held that "the question of compliance is not based upon a 'mechanical counting' of information addressing each enumerated category in the statute," but rather, "notice is sufficient if it gives the municipality what it needs for a 'full investigation and understanding of the merits of the claims advanced.' "[66]  A notice is sufficient when it "advises the municipality of the time and place of the injury, affords the municipality an opportunity to ascertain the character and extent of the injury sustained, and allows for the early investigation and resolution of claim disputes."[67]

Plaintiff's notice provided a highly detailed account of incidents at the school involving I.E. and the boy, including the date and circumstances of the events complained of, the nature of I.E.'s alleged injuries, and a statement of the monetary damages requested.  Plaintiff asserted that multiple policies were violated by the District's staff and that staff breached their duty to supervise the students.  Plaintiff further listed the types of claims Plaintiff intended to bring, including potential claims against "individual employees including the teachers and principal."[68]  Although Plaintiff did not identify specific employees and their addresses, Plaintiff's letter provided ample notice to the District that District employees were also likely to be named in the suit.  Plaintiff's notice was therefore sufficient under Kansas law.  Count VI against Defendant Messenger for breach of the duty to reasonably supervise students and protect I.E. from harm remains.

---

[65] *Id.*

[66] *Sleeth v. Sedan City Hosp.*, 298 Kan. 853, 317 P.3d 782, 791 (2014) (citations omitted).

[67] *Id.* (citation omitted).

[68] Notice of Claim, Doc. 6-2.

**F.     Violation of Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act of 1973**

Plaintiff asserts in Counts VII and VIII that the District violated I.E.'s rights under Title II of the Americans with Disabilities Act and § 504 of the Rehabilitation Act of 1973.  The District moves for judgment on the pleadings for both counts.  Because claims under Title II of the ADA and § 504 of the Rehabilitation Act "involve the same substantive standards," courts generally analyze the claims together.[69]  Both § 504 of the Rehabilitation Act and Title II of the ADA provide that no individual with a disability shall, "by reason of" such disability, be subjected to discrimination.[70]  To state a prima facie claim under § 504 or the ADA, Plaintiff must allege that: (1) she is a qualified individual with a disability; (2) that she "was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability."[71]

The Court concludes that Plaintiff has not stated a facially plausible claim for discrimination under § 504 or the ADA.  Although Plaintiff asserts that the District denied I.E. equal access to educational services by (1) refusing to transfer the boy from her school and (2) subjecting her to a hostile educational environment, Plaintiff fails to allege any facts that give rise to the inference that the District's actions were solely—or even partly—by reason of I.E.'s disability.

---

[69] *Miller ex rel. S.M. v. Bd. of Educ. of Albuquerque Pub. Sch.*, 565 F.3d 1232, 1245 (10th Cir. 2009) (citation omitted).

[70] 29 U.S.C. § 794(a); 42 U.S.C. § 12132.

[71] *J.V. v. Albuquerque Pub. Sch.*, 813 F.3d 1289, 1295 (10th Cir. 2016) (citation omitted).

In her response to the District's motion, Plaintiff admits "that she did not allege the reasoning for Defendants' failures were solely as a result of her disabilities," but suggests that the Court delay ruling until discovery can be conducted on the matter.  This request is contrary to the Federal Rules of Civil Procedure, however.  Under Rule 8, a plaintiff must allege "more than a sheer possibility that a defendant has acted unlawfully."[72]  Absent allegations which allow this Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged," Plaintiff's ADA and § 504 claims cannot state a claim upon which relief may be granted.[73]  Counts VII and VIII are therefore dismissed.

**IT IS THEREFORE ORDERED** that Defendant Blue Valley U.S.D. 229 and Lydia Messenger's Motion for Partial Judgment on the Pleadings (Doc. 5) is **GRANTED in part and DENIED in part**.

Counts II, III, IV, V, VII, VIII are dismissed.  Counts I and VI remain.

**IT IS SO ORDERED**.

Dated this 14th day of April, 2021.

Eric F. Melgren

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[72] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[73] *See id.*; *see also Barr v. Sedgwick*, 2020 WL 5572692 (D. Kan. 2020) (dismissing ADA and Rehabilitation Act claims where the plaintiffs failed to allege facts that would support a finding that the governmental entity had discriminated against the plaintiffs' child because of his disability); *E.C. v. U.S.D. 385 Andover*, 2019 WL 2073927 (D. Kan. 2019) (dismissing ADA and Retaliation Act claims where plaintiff failed to allege any facts giving rise to the inference that the government entity's actions were by reason of the plaintiff's disability).